IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | Case No. 3:04-CR-30029-NJR |
| **QUAWNTAY ADAMS,** | |
| **Defendant.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Defendant Quawntay Adams's Motion for a Sentence Reduction (Doc. 558) and supplements to that Motion (Docs. 558, 566, 570), which assert further grounds for seeking compassionate relief.

### FACTUAL & PROCEDURAL BACKGROUND

Adams was arrested in 2004 and ultimately charged in a third superseding indictment in 2006 on seven counts, as follows:

1. Conspiracy with Intent to Possess and Intent to Distribute 100 Kilograms or More of Marihuana;

2. Possession with Intent to Distribute 100 Kilograms or More of Marijuana;

3. Conspiracy to Commit Money Laundering;

4. Attempted Escape;

5. Attempted Escape;

6. Escape from Federal Custody;

7. Criminal Forfeiture.

(Doc. 247).

Counts 4-6 arose from two attempted escapes and one successful escape by Adams while he was in federal custody awaiting trial (*Id.*). On the first day of his trial, Adams entered a guilty plea on Count 6 (Doc. 394). Adams was subsequently found guilty on Counts 2-5 (Docs. 412-416). At sentencing, the Court concluded that Adams qualified for a "career offender" sentencing enhancement based on a 1993 conviction for assault on a police officer in California and a 1997 conviction for the sale of a controlled substance in California (Doc. 476). As a career offender, Adams faced a sentencing guidelines range of 360 months to life, with a statutory sentencing range of 10 years to life (*Id.* at ¶ 92). Adams was then sentenced to a term of 420 months of incarceration followed by eight years of supervised release (Doc. 478).

On his first appeal, the Seventh Circuit struck down the conviction on Count 3 and remanded for resentencing. *United States v. Adams*, 625 F.3d 371 (7th Cir. 2010). At resentencing, the Court imposed the same sentence of 420 months of incarceration followed by eight years of supervised release (Doc. 523). Adams attacked his classification as a career offender at resentencing, arguing that his California conviction was not a controlled substance offense under the guidelines, but the Court rejected that argument (*Id.*).

Adams again appealed his sentence, with the Seventh Circuit affirming the Court's reimposed sentence. *United States v. Adams*, 451 F. App'x 576, 577 (7th Cir. 2011). After his second appeal was rejected, Adams sought to collaterally attack his sentence under 28 U.S.C. § 2255, raising fourteen grounds in seeking habeas relief, including attacks on

the length of his sentencing range. *Adams v. USA*, Case No. 3:13-cv-00170-DRH at Doc. 1 (S.D. Ill. Feb. 20, 2013). The Court rejected Adams's arguments, the Seventh Circuit denied a certificate of appealability, and the Court rejected Adams's attempt to reopen his Section 2255 proceeding in a Rule 60(b) motion, finding that it constituted an impermissible successive habeas petition because it attacked the Court's previous resolution of a claim on the merits. *Id.* at Docs. 20, 45; *United States v. Adams*, No. 14-1010 (7th Cir. June 12, 2014).

Adams then filed a motion for reconsideration and a second Rule 60(b) motion, both of which were rejected by the Court. *Adams* at Docs. 55, 65. Adams appealed and was granted a certificate of appealability by the Seventh Circuit, which affirmed the Court's rejection of Adams's attempts to reopen his Section 2255 proceedings, noting that they constituted impermissible successive Section 2255 petitions. *Adams v. United States*, 911 F.3d 397, 409 (7th Cir. 2018).'

Adams subsequently filed the instant motion. While he has characterized his motion as a "Motion to Reduce Sentence," he in fact cited as authority for his motion 18 U.S.C. § 3582(c)(1)(A), a provision of the First Step Act which authorizes compassionate release where "extraordinary and compelling reasons" justify such relief, rather than 18 U.S.C. § 3582(c)(2), which authorizes resentencing based on a change in the sentencing range upon which a sentence was based. As extraordinary and compelling reasons, Adams notes that the First Step Act changed certain of the guidelines upon which his sentence was based, and that if he were sentenced today his guideline range would be 262 – 327 months, rather than 360 months to life (Doc. 558 at 3-4). Adams further

noted that he has a 15 year old daughter who was born after he was incarcerated. Adams argues that DOJ enforcement priorities have changed since the time of his arrest, arguing that enforcement policies towards marijuana are more lax than they were in the past (Doc. 555 at 8–15). Adams subsequently supplemented his motion, further noting the Covid-19 pandemic and providing medical records to show that he likely carries the Sickle Cell Trait but does not at this time suffer from Sickle Cell Disease (Doc. 570 at 1, 12).

## ANALYSIS

*A. Applicable Law*

Under the First Step Act, inmates are authorized to bring their own motions for compassionate release after first exhausting their administrative remedies with the BOP. 18 U.S.C. § 3582(c)(1)(A). Certain courts have stated that in making such a motion, a defendant should bear the burden of showing eligibility for a reduction in sentence. *E.g.*, *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

A defendant may be eligible for compassionate release if the Court finds "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). The Court also must find that the requested sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

Congress has tasked the Sentencing Commission with compiling "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission

has specified that certain circumstances surrounding the inmate's medical condition, age, and family situation will constitute extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13. The Sentencing Commission also gives the Director of the Federal Bureau of Prisons discretion to distinguish other grounds that could be extraordinary and compelling enough to merit a sentence reduction, either on their own or in combination with another listed condition. *See id.* at cmt. n.1(D).

Courts have in many instances taken it upon themselves, however, to identify non-enumerated grounds constituting extraordinary and compelling reasons for compassionate release, even where the Bureau of Prisons has not done so. *See, e.g.*, *United States v. Halliburton*, 2020 U.S. Dist. LEXIS 102241 at 10 (finding extraordinary reasons where defendant had underlying health problems in conjunction with the Covid-19 pandemic) (C.D. Ill.); *United States v. Coles*, 2020 U.S. Dist. LEXIS 72327 (C.D. Ill.); *United States v. Lewellen*, 2020 U.S. Dist. LEXIS 90195 at *8 (N.D. Ill.) (Noting court has joined "vast majority" of district courts in looking past "guideposts" of §1B1.13 criteria to construe what constitutes extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i)) (quoting *United States v. Cardena*, No. 09-CR-0332 (-11), slip op. at 6 (N.D. Ill. May 15, 2020) (ECF No. 1890)).

If an inmate can show that one of the eligibility criteria is applicable, the Court must then assess whether a reduction would be appropriate under the statutory sentencing factors described in 18 U.S.C. § 3553(a). U.S.S.G. § 1B1.13. Lastly, the Court must determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

Separate from a Motion for Compassionate Release, defendants may also seek to collaterally attack their sentences with a habeas motion pursuant to 28 U.S.C. § 2255. Unlike a motion for compassionate release, a § 2255 motion seeks to collaterally attack a sentence based on an argument that the sentence was in some way wrongly imposed. As the Government noted in its Motion to Dismiss and has again noted in its response to Adams's motion for compassionate release, a defendant is only allowed to make successive § 2255 motions in certain specific circumstances, such as where a defendant can point to newly discovered evidence or a new rule of retroactively applied constitutional law. The passage of a new law such as the First Step Act does not by itself constitute new evidence or a new rule of constitutional law.

Even when a defendant characterizes his motion for relief from his sentence as seeking compassionate relief, it may still in certain circumstances be properly construed as a habeas motion, in which case it is subject to the rule barring successive habeas motions. In general, a motion is properly construed as a successive habeas petition where it seeks to collaterally attack a previously imposed sentence on grounds similar to those outlined in § 2255, *e.g.* that it was in some way wrongly imposed. *United States v. Carraway*, 478 F.3d 845, 848-49 (7th Cir. 2007). A motion for compassionate release is not, however, necessarily barred as a successive habeas motion—indeed, many courts have recognized that a motion for compassionate release will still be permissible even where a successive habeas petition is barred. *See, e.g.*, *Yanez v. Cross*, 2012 U.S. Dist. LEXIS 112625 at *2 (S.D. Ill.) (rejecting a successive habeas petition but noting that defendant could still seek compassionate release); *United States v. Chavez-Cadenas*, 2020 U.S. Dist. LEXIS 78665

at *10-12 (D. Kan.) (rejecting a petition for sentence reduction under the First Step Act as a successive habeas petition but proceeding to consideration of a motion for compassionate relief based on the Covid-19 pandemic).

B.  *Discussion*

**Reconsideration of the Court's Order on Government's Motion to Dismiss**

In its previous order rejecting the Government's Motion to Dismiss, the Court looked at Adams's Motion under the framework of a successive habeas petition based on the Government's filings asserting that it should be treated as such. In its order, the Court found that Adams's Motion was permissible because the passage of the First Step Act constituted newly discovered facts for the purposes of § 2255. The Court now sees that this position has been rejected by other courts and that the sentencing disparity raised by Adams's motion would not provide a basis for a successive habeas petition.

Upon closer examination, however, the Court views it as incorrect to apply the standard for habeas petitions to Adams's motion. While certain Motions for Compassionate Relief are properly construed as successive habeas petitions, that does not seem to be the case here. Unlike in his previous attempts to set aside his sentence, Adams does not argue that the sentence was wrongly imposed or calculated, or otherwise subject to collateral attack. Rather, he raises the disparity with current sentencing practices as one of a number of issues, including his efforts towards rehabilitation, medical condition, and the Covid-19 pandemic, as one of a number of factors which together he argues constitute sufficient reason for the Court to exercise its discretion to revisit a sentence that was correctly imposed. Accordingly, the Court will proceed to

consideration of his motion.

**Adams's Motion for Compassionate Release**

Adams seeks compassionate release, arguing that a number of factors, including the disparity between his sentence and a sentence under the current guideline as well as the Covid-19 pandemic and his underlying medical condition, taken together with his efforts towards rehabilitation, constitute extraordinary and compelling reasons that warrant a sentence reduction. The Court is inclined to agree.

The Court starts by noting that the Covid-19 pandemic alone has been found not to constitute an extraordinary and compelling reason warranting sentencing reduction. The pandemic has created a clear need to reduce prison populations, however, as has been recognized by authorities such as Attorney General William Barr. *See, e.g., Memorandum for the Director of the Bureau of Prisons,* Department of Justice, March 26, 2020. While rejecting the pandemic as a sole reason justifying sentence reduction, courts have found the pandemic together with an underlying medical condition increasing inmates' susceptibility to constitute reasons warranting reduction. Here, however, Adams's medical condition does not presently increase his susceptibility to Covid-19—while he could in the future develop Sickle Cell Disease, the mere presence of Sickle Cell Trait does not appear to increase susceptibility to Covid-19. Thus, if Adams were seeking release based solely on the pandemic and his medical condition, the Court would be inclined to deny his motion.

But Adams points to additional factors which weigh in favor of release, noting the disparity between his sentence and what he would likely have received under the current

guidelines. Adams was sentence to 420 months, approximately 1.16 times the minimum sentence under the guidelines at the time. With the changes to the "career offender" sentencing enhancement created by the First Step Act, Adams's minimum under the current guidelines would be 262 months, and a comparable sentence of 1.16 times the minimum would be 304 months. To date, Adams appears to have served approximately 196 months, or roughly 64% of a comparable sentence under the current guidelines.

Adams further points to his performance in prison and the efforts that he has made towards rehabilitation. While Adams did make three escape attempts during his time in prison, one of which was successful, for the last 14 years he appears to have been a model inmate, showing no signs of significant disciplinary violations. He has completed numerous education programs while in prison and has been employed in prison during his time in incarceration. Adams has further devoted significant time to legal pursuits, pursuing a significant number of *pro se* filings of decent quality, and he appears to have additionally published a memoir. As he points out, he has a daughter with whom he communicates regularly and whom he has never met outside of prison.

Based on the Court's review of these four factors, the Court is of the view that the remarkable disparity between Adams's sentence and a comparable sentence today, as well as Adams's noteworthy progress towards rehabilitation would likely constitute sufficiently extraordinary and compelling reasons to merit a sentence reduction, but not immediate release. Taken in conjunction with the backdrop of the Covid-19 pandemic and Adams's underlying medical condition, however, Adams looks like a good candidate for early release. Releasing Adams early would mitigate the risk of his medical condition

worsening and increasing his susceptibility to Covid-19, while furthering the Government's stated aim of decreasing the density of prison populations.

The Court's tendency to view Adams as a good candidate for compassionate release is supported by a look at the statutory sentencing factors of 18 U.S.C. § 3553(a). Statutory factors to be considered regarding sentences under 18 U.S.C. § 3553(a) involve the need for the sentence imposed to reflect the seriousness of the offense, deter similar conduct, protect the public from further crimes, and provide the defendant with opportunities for rehabilitation. Here, enforcing the lengthy sentence previously imposed upon Adams will not serve these aims—similar crimes committed by similar defendants would no longer receive a similar sentence, reducing the deterrent effect of Adams's lengthy term of incarceration. The court further notes that the sale of marijuana for recreational purposes is sanctioned and regulated by the state of Illinois, and federal prohibitions on the sale of marijuana within the state are not being actively enforced, further reducing the deterrent effect of a harsh sentence such as that which Adams is serving. The Court further notes that Adams has already had ample opportunity for rehabilitation in his 16 years of incarceration, and he has taken that opportunity, completing numerous programs intended for his rehabilitation. The statutory sentencing factors further note the need to avoid disparities in sentencing—shortening Adams's sentence vitiates the disparity with current sentencing practices, and while releasing Adams early may create a disparity with later sentences, this is easily justified by the unusual circumstances of the Covid-19 pandemic.

Similarly, the Court finds that shortening Adams's sentence is not inconsistent

with the policy statements of the Sentencing Commission at 18 U.S.C. Appx. § 1B1.13. As the Court has observed, other courts within the Seventh Circuit have found that since the passage of the First Step Act, these policy statements guideposts towards what constitutes extraordinary and compelling reasons justifying release, rather than an exclusive list of criteria. That said, the Court notes that its reasoning above is consistent with the policy statements of § 1B1.13, finding that Adams's medical condition, taken "in combination with" a number of other circumstances, constitutes an extraordinary and compelling reason justifying his release, as described at Note 1(D) of § 1B1.13.

Lastly, the Court observes that Adams does not appear to be a danger to society. The crimes for which Adams was sentenced were not crimes of violence, and the only violent crime noted in his Pre-Sentencing Report was committed in 1993, when he was 17 years old. The Court does note that after an earlier release from prison in 1994, Adams failed to report for parole and was declared an absconder, but the Court notes that this conduct occurred 26 years ago. Adams does have a lengthy criminal history from his youth and appears to have had difficulty in the past in extricating himself from the narcotics trade. Incarceration is intended to reform offenders, however, and the Court believes that the significant length of time that Adams has already served, as well as the visible efforts that he has made towards rehabilitation, show sufficient progress that the Court is comfortable with his release.

## Conclusion

Accordingly, the Court intends to grant Adams's Motion for Compassionate Relief (Doc. 127), reducing Adams's term of incarceration to time served. At this time, however, the Court **ORDERS** Adams to submit a home plan within **7 days** describing where he intends to reside upon release so that the Probation Office may investigate it to determine whether it is sufficient for his term of supervised release.

**IT IS SO ORDERED.**

**DATED:   July 6, 2020**

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**